By the Court:

Fithian, J.
That, the managers of defendants’ express train were guilty of negligence in passing that station without giving the usual and ordinary signals, must be assumed, for there was *510 evidence upon which the jury might well have so found, had the cause been submitted to them. " The only question in the case, then, is, considering the defendants to be guilty of negligence, whether there was negligence also on the part of the deceased, contributing to the injury. If so, it is settled there can be no recovery.
The Court of Appeals have decided in this case that it was clear, upon the evidence before that court, Gonzales omitted to look and see if there was any approaching train before attempting to cross the track; that if he had so looked he must have seen the express train and avoided the injury; and that such omission was negligence on his part so as to debar a recovery. This must be taken as the law of this case; we could not 'change it if we would; that is also settled to be the rule in all cases. In the case of Wilcox v. the Borne, Watertown, &c., Railroad Company, decided by the Court of Appeals in June last (1868), it was held to be negligence per.se for a person to go upon a railroad track, and omit to exercise his ordinary powers of vision, when by so doing he could see and avoid any approaching ear or engine. Miller, J., reviewed all the cases on the subject, and showed clearly that the principle was recognized in every ease; that in every case where a recovery had been permitted without the precaution, “ circumstances existed tending to show that the sight was obstructed, or to fender it at least doubtful whether the party was in fault, so that it was proper for, the jury to pass upon the question of negligence.” Grover, J., wrote a concurring opinion, and the decision of the court was unanimous. It must, therefore, be considered settled by the court of last resort, that for a person to go upon a railroad track without exercising the ordinary sense of hearing and seeing, with a view to discover and avoid any approaching obstacle, is, of itself, prima facie,an act of negligence. And if an injury happen to the person in consequence of so being upon the track, the burden is upon the injured party to show a legal excuse for omitting thus to avail himself of the protection afforded by his ordinary senses. He may *511 show that, by some matter or thing over which he had no control, the view or sounds were so obstructed that seeing or listening would have afforded no protection; or that, by some act or neglect of the alleged wrongdoer, he was justifiably excused from so looking; some fact must be shown which will take the case out of the general rule above stated.
The inquiry in this case, then, is whether on the second trial any evidence appeared, not proven on the first trial, sufficient to excuse plaintiff’s intestate for his omission to see and avoid the express train, and thereby except the case from the effect of the decisions above cited.
On the last trial it was conceded that deceased did not look, or attempt to look, for the reason, as it was then for the first time proven, that his sight was so impaired he could not see an approaching train; that for all purposes oí protection by the sense of sight, from an approaching train, he was substantially blind. And it was further claimed, that he was excused for thus going upon the track unable to see, and without protection, by the act' of defendants’ servant in calling: “All out for Moxont Vernon ! ” It was claimed tiffs cell was equivalent to an assurance to the passengers, by the defendants’ servants, that they could safely go upon the track without care or precaution. These words cannot possibly bear such a construction; they were merely notice to the “Mount Vernon” passengers that they had arrived at their place of destination; that, so far as they were concerned, the company had performed its contract with them, and they were requested to leave the defendants’ cars by the usual and ordinary mode of exit provided by the carrier, viz., the platform. This notice, and the passenger leaving the car in pursuance of it, terminated the relation of passenger and carrier. And how it could be construed by any person of ordinary intelligence into a further license or permit unnecessarily to go upon defendants’ railroad track with impunity and exempt from the duty of observing ordinary care and precaution, I am unable to see.
The remaining question is, whether the deceased was excused for not looking for the approaching express train by reason of *512 Ms blindness; or, in other words, is it equally an act of negligence for a person who cannot see to go upon a railroad track unattended, as it is for a person who can see and omits to do so ? In a person possessing the ordinary powers of vision, the negligence consists not alone in omitting to use them but in presuming to go upon the railroad track, knowing cars were likely to pass at any certain or uncertain time, without first taking that precaution wMch a person of ordinary care and prudence, possessed of ordinary faculties, would be likely to do, viz., to look for any approaching train.' Is it not equally negligent for a person who does not possess the sense of sight to go, without assistance, upon a track where eight years’ experience had told him trains were frequently passing and are expected and known to pass just about that time?
Negligence is defined to be the “ omission to observe that care which a man of common prudence takes of his own concerns.” In the case of Hatfield v. Roper (21 Win., 615), the plaintiff, a child two years of age, was suffered by its parents to go in the highway, and was there negligently injured by defendant’s horses and sleigh, in the custody of defendant. It was held to be an act of negligence on the part of the parents or guardians to suffer a child of so tender years to be in the highway; and that this was the negligence of the infant, although it did not possess the faculties of a person of full age and discretion; and that the same rule would apply to an idiot or lunatic, which rule was applied to a lunatic in the case of Willets v. Buffalo and Rochester R. R. Co. (14 Barb., 585), where it was held that the act of a custodian of a lunatic, in leaving him unattended so that he was put off the cars on a railroad track for refusing to pay his fare, and run over and killed by another train, was negligence, chargeable to the lunatic himself, such as to preclude a recovery by the administrator. I understand the doctrine'of all these authorities on the subject of actions for negligence, to be, in substance, that, to enable a plaintiff to recover for an injury sustained by the negligence of another, he must show that in the particular case he exercised all the care and prudence which *513 persons of usual and ordinary faculties would be likely to exercise, under similar circumstances, to avoid the injury. It follows, therefore, that a person bereft of sight or hearing cannot recover for an injury resulting from an act, or partly from an act, done blindly* which injury could have been avoided by the possession and exercise of the sense of sight or hearing, because it was negligence in him to go upon the track without first supplying, through the aid of others, those faculties of which he was himself bereft.
In this case, the plaintiff’s intestate, Gonzales, was possessed of all his faculties save eye-sight. He had resided eight years on the line of defendants’ railroad, passing over it, to and from this particular station, nearly every day. He was familiar with the mode and place provided for ingress and egress to and from the cars,'the number of tracks, the number and time of trains passing north and south. He must have known that there was an express train passing south, due at that station, at or about that time. The time-table, put in evidence by plaintiff, shows that the express train, and the train that Gonzales was on, pass that station within a minute of each other; the express train being a minute later. So that, if both trains were on time, Gonzales would have just one minute in which to get out and cross the railroad track ahead of the “ express.” In this case, either the express was a minute ahead, or the way-train a minute behind time, for the trains met at that point. The plaintiff (Mrs. Gonzales) says she saw from her house her -husband standing on the, platform of one. of the cars, ready to get off, just as the train was coming to a stop. Another witness for plaintiff testifies he saw the whole occurrence from his own residence. He saw the express ■ train approaching from the north, at some distance off, before the way-train from the south had stopped its motion. As the way-train stopped, looking across the south end of the depot, he saw Gonzales in the act of getting off the platform of one of the cars. At the .same-instant he saw the express train disappear behind the north end of the depot, and just as Gonzales stepped *514 on the track he was struck by the express train in passing. Thus it appears that this blind man, knowing, as he must have known, there was a train about to pass—instead of leaving the car on the side and in the manner and at the place provided for such purpose, where there was no exposure to injury, and not attempting to cross the track until the “ express” had passed, or he had assured himself it was safe to do so—gets off on to the trade in an exposed place, and steps directly in front of the passing train. This is not only negligence but extreme recklessness, inexcusable by any known principle of law or reason; and this upon the assumption that he was substantially Hind. That, however, was not the fact wholly. His sight was much impaired, but it was proved and conceded by plaintiff’s counsel that he could see an approaching train ninety or one hundred feet. The ordinary exercise of even this much vision would have saved him. Tor, as he stepped upon the ground from the way-train, the express could not have been ninety feet from him, and a single glance in that direction would have prevented the accident. He did not look, but walked directly into the engine of the express train.
I appreciate fully the hardship and suffering caused by a misfortune of this kind, and would gladly afford relief to a family thus bereaved if I could consistently do so. But the rules of law and the decisions of the courts must be adhered to.
The plaintiff’s motion for judgment must be denied, and the order dismissing the complaint affirmed, with costs, and judgment ordered for defendants.-